DAVIS, Chief Judge.
B.K., the Father, seeks review of the trial court order setting a permanent guardianship and placing his children with their maternal grandparents. We reverse the order and remand for further proceedings consistent with this opinion.
*432 The Father is the nonoffending parent in a dependency action opened when the children were removed from a home in Volusia County where the Mother, A.K., was living with her boyfriend. The Department of Children and Families (the Department) sheltered the children in Volusia County in May 2012, and the children were placed with their maternal grandparents in Hillsborough County. The children were adjudicated dependent only as to the Mother based on her consent.[1] But because the Father was living in Tennessee and his contact with his children had been limited during that time, it was agreed that the children would remain with the grandparents while a plan of transition to Tennessee was implemented, with permanency being an alternative goal if placement with the Father could not be achieved.[2] This plan included the completion of a home study in Tennessee, a series of completed drug tests by the Father, telephone calls, and extended unsupervised visits by the children with the Father and his new wife in Tennessee. Although all of these things occurred successfully and the children did bond with the Father, the dependency proceedings were transferred to the Thirteenth Circuit in Hillsborough County before this plan of transition was formally completed.
The Department initially considered the Father to have not completed his requirements for reunification in the 2008 proceeding, but according to the record from the Seventh Circuit, he quickly remedied what appeared to be mostly administrative necessities, the Department acknowledged that he was in full compliance prior to the transfer of the matter to Hillsborough County, and any allegations in the instant action related to him were dismissed. Additionally, the home study conducted in Tennessee was favorable, and the Father has remained substance free since his move to Tennessee — passing multiple drug screenings over the course of these proceedings.
The record indicates that the Department willingly proceeded with a goal of reunification with the Father and that it was the intent of the parties that the reunification process be extended only to allow the Tennessee agency time to complete the home investigation and to allow the children time to bond with the Father. The court specifically found that not extending this transition would endanger the welfare of the children. The court did not find that placement with the Father would so endanger the children, and the Mother, as the only offending parent in the instant proceeding, was the only person given a case plan and tasks to complete. Once the dependency was transferred to Hillsbor-ough County in April 2013, the case plan remained a continuation of the one originally entered in Volusia County, listing concurrent goals of reunification or permanency with the grandparents.
Nevertheless, in May 2013, at the behest of the trial court, the Department moved to terminate services and requested that *433 the children be placed permanently with the grandparents. Within this motion, the Department claimed that reunification would be “contrary to the welfare and not in the best interest of the children” and was not possible “because of circumstances from which the [c]ourt previously based its finding that the children are dependent in the order of adjudication.” The Department’s motion also stated that “[t]he court has previously determined that placement with the father would pose a risk to the children’s health, safety, and well-being.”
The trial court held a hearing and entered an order on May 16, 2013, basing its decision on the reasons stated in the December 19, 2012, order of the Seventh Circuit and on the testimony presented at the May 9, 2013, hearing. The trial court found that a change of placement to the Father “would endanger the health, safety, well-being, and mental and emotional health of the minor children.” Then following a second hearing on June 24, 2013, the trial court entered an order on the Department’s motion granting permanency with the grandparents and denying the Father’s motion for reunification. In this order, the trial court acknowledged that the Father has turned his life around and that he is a nonoffending parent in this proceeding. However, the court based its conclusion that reunification with the Father cannot occur on its findings that the Father abandoned the children in 2009 by moving to Tennessee and that the Father failed to complete his 2008 case plan. The trial court concluded that it was in the best interests of the children to remain with the grandparents while granting liberal unsupervised visitation to the Father.
On appeal, the Father argues that the trial court erred by failing to consider and properly apply the factors for permanency set forth in section 39.6221, Florida Statutes (2012), and failing to set forth specific reasons why he is not fit to care for the children or why reunification is not possible. The Father maintains that the trial court’s finding that he abandoned his children is not supported by the evidence and was not even alleged by the Department. He further points out that the trial court’s finding that he failed to complete his case plan is erroneous for the sheer fact that when the Department dismissed the petition against him in 2008 and deemed him a nonoffending parent, it gave him no additional case plan in the instant case to complete.[3]
We agree with the Father that the trial court abused its discretion in denying his motion for reunification and awarding permanent placement with the grandparents because the trial court’s conclusions are not reasonably objective or based on any specific findings. See J.H. v. Dep’t of Children & Family Servs., 865 So.2d 634, 635-36 (Fla. 2d DCA 2004) (“Although the trial court here stated in its order that reunification was ‘contrary to the welfare of the children because the home situation presents a substantial and immediate danger to the children’ and that’ there is continued need for out-of-home placement to ensure the child[ren]’s health, safety and well-being,’ these conclusions are not based on any specific findings and, therefore, are not reasonably objective.”).
First, because the Department did not even allege abandonment in this petition, *434 the instant record does not and cannot support such a finding. For similar reasons, we also must agree with the Father that the trial court abused its discretion in finding that he failed to complete a case plan for which he was given no tasks.
Furthermore, the children’s preference to remain with the grandmother and merely visit the Father is not a basis on which the trial court could conclude that the ongoing transitional reunification with the Father was detrimental to their safety, well-being, or health. The closest thing to a supportable basis for such a finding is that the therapist working with the children found that the removal from their grandmother, who had been a source of stability for them over the years, would be detrimental and against the “best interests” of the children. But from the beginning of the Volusia County proceeding and throughout the current case, all parties recognized that any reunification would necessarily occur transitionally, with liberal, incremental visitation with the Father ultimately leading to reunification with him. This ongoing goal had been completed successfully throughout the case plan, and there is nothing to indicate that the Volusia County trial court’s initial conclusion — based on that same therapist’s recommendations — that such a transition would not endanger the health, safety, or well-being of the children, should have changed based on what was accomplished throughout the year. In fact, while the therapist did not recommend placement with the Father, she acknowledged that much of the remaining need for counseling with the children was a result of the court-created extended period of not knowing where they would be placed rather than as a result of any fear of the placement itself.[4]
Moreover, the findings required by section 39.6221(2), upon which the trial court apparently based the permanency decision, do not operate in a vacuum. The trial court in Volusia County initially was required to set forth a plan for returning custody to the nonoffending Father not subject to an independent best interest determination at the time of the initial order of dependency as to the Mother. See B.C. v. Dep’t of Children & Families, 864 So.2d 486, 491 (Fla. 5th DCA 2004) (“The non-offending [sic] parent’s presumptive right to custody is mandatory and not subject to a separate determination of the child’s best interests.”); see also N.T. v. Dep’t of Children & Family Servs., 8 So.3d 1287, 1288 (Fla. 2d DCA 2009). The record shows that there was no finding that the goal of transitional placement with the Father would endanger the safety, well-being, or physical, mental, or emotional health of the children at that time and that the initial order of dependency was not challenged. It is therefore unsupportable for the trial court in the instant Hillsborough County proceeding to merely use the same opinions and evidence before the court in the Volusia County proceedings as a basis for its opposite determination. This is especially true where the children have now successfully transitioned to long unsupervised, out-of-state visits with the Father and the record now contains a positive home study completed in Tennessee — both findings that support the ongoing success of the transition intended by the goals of the original case plan. Furthermore, any determinations to the contrary are not reasonably objective because they are not based on any specific findings. See J.H., 865 So.2d at 635-36. And as noted above, to the *435 extent such findings could be based specifically on abandonment or failure to comply with the case plan, those allegations were not properly alleged nor were they supported by the evidence.
We therefore reverse the order establishing a permanent guardianship and remand the matter for the entry of an order resolving this action in favor of the nonof-fending Father unless there is additional evidence provided by the Department to show that circumstances have changed such that the original goal of reunification cannot occur. We note that according to the record, the Mother was close to substantive compliance with her case plan. Although her appeal was dismissed, the trial court should make any determinations as are necessary on remand regarding the Mother and her visitation and parenting rights.
Reversed and remanded.
CRENSHAW and BLACK, JJ., Concur.

. The dependency proceedings as related to the Mother resulted in the same order on appeal as in the instant case. The Mother initiated an appeal, but she failed to file a pro se brief as ordered by this court, and the proceeding was dismissed.

. It is undisputed that both parents had substance abuse problems during their marriage and that the Department had sheltered the children in regard to those problems in 2001 and 2008. The parties eventually divorced. In 2009 the Father moved to Tennessee, ostensibly to get away from certain influences and to get his life together. These are goals which by all accounts he successfully accomplished. The Mother completed her case plan from the 2008 dependency, and the children were reunited with her in 2009, while the Father was in Tennessee.

. Regarding the 2008 case plan, the Father argues that the Department and the court did not impose any additional tasks on him and that had he been assigned tasks, he would have completed them. Regarding the abandonment issue, the Father argues there is no competent substantial evidence to support this allegation since he had been participating in unsupervised, extended visits with his children in Tennessee for several years and has made repeated attempts to maintain phone contact with them in between visits.

. We acknowledge that the record does contain some vague concerns regarding placement in Tennessee but note that none are of the variety that could not be addressed by the transfer of the Department’s services to an appropriate agency in Tennessee.